UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANTOLIN ANDREW MARKS,<br><br>               Plaintiff,<br>v.<br><br>GARY GARMAN et al.,<br><br>               Defendants. | Case No. C07-5282FDB/JKA<br><br>REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS<br><br>**NOTED FOR:**<br><br>**July 25, 2008** |

This action brought as a Bivens/Federal Tort Claims Act/ Federal Freedom of Information Act action, has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(B). As a preliminary matter the District Court Judge assigned to this action is the Honorable Franklin D. Burgess. Defendant's motion to dismiss correctly identifies the judge in the upper right hand corner but uses the designation for Judge Bryan, "RJB" in the caption. Plaintiff's response uses the designation for Judge Leighton, "RBL" in the caption.

Having reviewed the complaint, the motion to dismiss, the response, and the remainder of the file the court concludes that plaintiff's Bivens claim is without merit. Further, Defendants challenge the court's jurisdiction to entertain the remaining claims on the basis that plaintiff failed to show he had exhausted his administrative remedies. Plaintiff's response fails to show he has in fact properly exhausted administrative remedies with regard to his Federal Tort claim and his Freedom of Information Act claim. In addition,

despite plaintiff's assertions to the contrary, the complaint makes clear that this action is a collateral challenge to prior rulings in other cases. Plaintiff should be given a very limited opportunity to provide the court with proof he filed a Federal tort claim that covers the allegations in this complaint and that his claim was denied. If plaintiff cannot make that showing, the action should be dismissed. The Bivens claim should be dismissed with prejudice. The other two claims should be dismissed without prejudice.

## FACTS

Plaintiff has gone by a number of names including Wayne Elison Rudder, Vincent Daniel Hopper, and Antolin Andrew Marks. Plaintiff's finger prints match the finger prints of Wayne Rudder who was admitted to the United States as a native of Trinidad on or about March 7, 1974. (Hopper v Roach, 05-CV-1812RSL Dkt. # 37).

In 1991 the government placed Mr. Rudder in deportation proceedings where he admitted to the charges against him and admitted to deportability. Mr. Rudder was ultimately deported to Trinidad on December 9, 1993.

On January 14, 1994, Mr. Rudder illegally re-entered the United States. He remained in the United States for more then eleven years before being found in a California prison. Plaintiff was using the name Vincent Daniel Hopper while in the California prison.

Plaintiff has legally changed his name to Antolin Andrew Marks, and the court will refer to him by that name. In the complaint, on page one, plaintiff alleges he was born Vincent Daniel Hopper (Dkt # 5). Thus, at the outset he implies the 1993 decision to deport him as Wayne Rudder was improper. In the complaint, on page two, Plaintiff alleges he submitted a tort claim in the amount of seven hundred and fifty thousand dollars and ICE denied the claim. Contrary to the assertions plaintiff makes in his response to the motion to dismiss, he did not submit a copy of the tort claim with his complaint (Dkt # 27, page 8).

Plaintiff's first claim is that the defendants "conspired to prevent the plaintiff from succeeding in his legal proceedings by deliberately preventing the plaintiff from gathering access to the records held by the defendants." (Dkt # 5, page 2). Plaintiff next alleges the defendants have engaged in "mental torture." (Dkt. # 5, page 2 and 3).

In the facts section of the complaint Plaintiff alleges he made a request for the Joanne Rudder file held by "USCIS." Plaintiff alleges he needed information in that file to subpoena Joanne Rudder who

would testify in his Immigration hearing that the plaintiff is not Wayne Rudder. Plaintiff alleges he made the request to defendants Garman and Melendez (Dkt. # 5, pages 3 and 4). Plaintiff has not supplied a copy of his Freedom of Information request to the court. The format and context in which the request was made are not before the court. Plaintiff specifically alleges that as a result of not having access to this file he lost his immigration case and that he would have won the case if he had this information (Dkt. # 5, page 4). Thus, he is calling into question the propriety of that immigration court decision.

Plaintiff's next alleged Freedom of Information request is for an immigration file for Marva Rudder. Plaintiff makes the same contentions with regard to this file as to the Joanne Rudder file (Dkt # 5, pages 4 and 5).

Plaintiff also alleges he requested his own file and alleges he needed "applications" in his file to support, "a legal proceeding" (Dkt # 5, page 6). Plaintiff does not identify specifically which legal proceeding he is referencing.

Plaintiff alleges he sought copies from his custody file and grievance file held by "GEO" (Dkt # 5, page 6). He alleges he made this request to defendant Melendez. Plaintiff alleges he needed incident reports, grievances, and kites, that are in his custody for litigation (Dkt. # 5, pages 6 to 8).

Plaintiff alleges he sought a copy of the Evercom telephone contract. Plaintiff claims specific injury to a legal case as a result of allegedly not getting the contract (Dkt. # 5, page 9). Defendants allege a copy of the contract was provided in other litigation.

Beginning on page 9 of the complaint plaintiff alleges he arrived at the Northwest Detention Center and indicated his name was Antolin Andrew Marks. He alleges this name is a "pseudonym" for Vincent Daniel Hopper (Dkt. # 5, page 9). Plaintiff alleges he requested GEO employees change his records and keep them under the name Vincent Daniel Hopper, and that the officers initially complied with his request (Dkt # 5, page 10). Plaintiff alleges "GEO" records were labeled Antolin Andrews aka Vincent Daniel Hopper. Plaintiff alleges defendants Garman and Melendes demanded plaintiff be called Wayne Rudder (Dkt. # 5, page 10). Plaintiff specifically denies he is Wayne Rudder (Dkt. # 5, page 10). Thus, plaintiff is attempting to impugn both the 1993 decision to deport him and the later immigration finding of deportability.

Plaintiff complains of emotional injury, mental torture and an Eighth Amendment violation as a

result of officials keeping his records and name tag under the name Rudder and Calling him Rudder (Dkt # 5, page 10 to 14). Plaintiff does not seek to change the records but asks for an injunction forcing defendants to call him Antolin Andrew Marks and preventing the defendants from making him answer to Wayne Rudder or sign the name Wayne Rudder (Dkt. # 5, page 15). He also seeks seven hundred and fifty thousand dollars in damages and asks for files and information he claims to have requested including files for Joanne , Marva, and Wayne Rudder, The file of Elison John (father of Wayne Rudder), His GEO custody file and his ICE grievances and kites (Dkt. # 5 page 15 and 16). Plaintiff names as defendants Gary Garman, Michaels Melendez, Neil Clarke and the United States of America.

Defendants move to dismiss and argue that while plaintiff stylizes the complaint as being brought under the Federal Tort Claims Act and the Freedom of Information Act, the claims are actually collateral challenges to findings of fact in deportation proceedings and challenges to discovery rulings made in other cases (Dkt # 21, page1). Defendants argue the claims in this action have been litigated and lost in other actions and are barred under the doctrine of *res judicata*. Defendants also move to dismiss the issue regarding plaintiff being called Wayne Rudder for failing to state a claim as a matter of law. Defendants challenge the court's jurisdiction to hear the Freedom of Information Act claim and Federal Tort Claim. Defendants allege plaintiff fails to show he has exhausted his administrative remedies prior to filing this action and that those two claims require exhaustion as a prerequisite to litigation.

STANDARD OF REVIEW

Defendant's motion is both an unenumerated rule12 motion and a 12 (b)(6) motion. A motion to dismiss for failure to exhaust administrative remedies is properly brought as an unenumerated 12(b) motion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003) (citations omitted). When dismissal is based on failure to exhaust administrative remedies, the dismissal should be without prejudice. Wyatt, 315 F.3d at 1120. The court may look beyond the pleadings to determine the jurisdictional question of exhaustion.

Under Fed. R. Civ. P. 12(b)(6) dismissal is proper if it appears beyond doubt that the plaintiff can prove no set of facts to support the claim that would entitle the plaintiff to relief. Keniston v. Roberts, 717 F.2d 1295, 1300 (9th Cir. 1983), citing; Conley v. Gibson, 355 U.S. 41, 45-56 (1957). Dismissal for failure to state a claim may be based on either the lack of a cognizable legal theory or the absence of

sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. Keniston v. Roberts, 717 F.2d 1295 (9th Cir. 1983).

DISCUSSION

1. <u>Bivens claim regarding plaintiff's name and records.</u>

The court recognizes that plaintiff is a deportation detainee and not an inmate. The bulk of cases addressing the subject of name changes, deal with religious name changes. These cases were decided in the prison context. Plaintiff does not maintain the reason he changed his name has anything to do with a religious belief. The Ninth Circuit has stated:

> For at least 16 years, federal courts have been wrestling with inmates' use of religious names. The cases have consistently supported three propositions. First, an inmate has a First Amendment interest in using his religious name, at least in conjunction with his committed name. *See*, e.g., Salaam II, 905 F.2d at 1170; Felix v. Rolan, 833 F.2d 517, 518 (5th Cir.1987); Barrett v. Virginia, 689 F.2d 498 (4th Cir.1982). **Second, an inmate cannot compel a prison to reorganize its filing system to reflect the new name**. *See*, e.g., Barrett, 689 F.2d at 503; Akbar v. Canney, 634 F.2d 339, 340 (6th Cir.1980), cert. denied, 450 U.S. 1002, 101 S.Ct. 1712, 68 L.Ed.2d 205 (1981). Third, in states where inmates are allowed to change names legally, prisons are generally required to recognize only legally changed names. *See*, e.g., Rahman v. Stephenson, 626 F.Supp. 886 (W.D.Tenn.1986); Salahuddin v. Coughlin, 591 F.Supp. 353 (S.D.N.Y.1984).

Malik v. Brown, 71 F.3d, 724, 728 (9th Cir. 1995)(emphasis added). Plaintiff complains because the government changed records held by GEO to reflect the name plaintiff had used in previous deportation proceedings, Wayne Rudder. This change made the record of his name the same as previous government records. Plaintiff has no recognized interest in the manner in which the government keeps or stores its records, and the issue of changing the records to reflect the previous name fails to state a claim as a matter of law.

Plaintiff does not claim he changed his name for any religious reason. Even if the court assumes Plaintiff has a First Amendment right to the name, Antolin Andrew Marks, the defendants have not violated plaintiff's rights by calling him by the name his records are kept under. As long as the Officials allow Mr. Marks to use his new legal name, in conjunction with the name his records are held under, there is no constitutional violation. Further, words, without more do not constitute a constitutional violation. Oltarzewski v Ruggiero, 830 F2d. 136 (9th Cir. 1987).

Plaintiff's final <u>Bivens</u> assertion is that calling him by the name Wayne Rudder is torture, and a violation of the Eighth Amendment. This claim is frivolous. The Eighth Amendment prohibits cruel and unusual punishment. Courts considering a prisoner's claim must ask: 1) if the officials acted with a sufficiently culpable state of mind; and 2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. <u>Hudson v. McMillian</u>, 503 U.S. 1, 8, (1992) (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 298, 303, (1991)). Plaintiff fails to show any injury. This claim trivializes the protections found in the Eighth Amendment.

To the extent plaintiff alleges he is not Wayne Rudder he calls into question prior decisions of the immigration court and prior habeas corpus decisions. The proper avenue for such a challenge is not a <u>Bivens</u> action. <u>See</u>, generally, <u>Heck v. Humphrey</u>, 512 U.S. 477, 487 (1994).

This <u>Bivens</u> claim should be **DISMISSED WITH PREJUDICE**.

2. <u>Freedom of Information Act Claims</u>.

Plaintiff states he made his requests for information "using subpoenas, and demands for production in several cases." (Dkt. # 27, page 5).

Defendants move to dismiss the Freedom of Information Act claims as unexhausted and as collateral challenges to rulings made in other litigation (Dkt # 21). "A lawsuit seeking to compel the disclosure of records under the FOIA is subject to dismissal for failure to exhaust administrative remedies where the initial request or method of submission is defective, such as....submitted initially at the trial court level." <u>See</u>, <u>112 A. L. R. Fed</u> 561, 570<u>.</u>

Defendants are challenging the court's subject matter jurisdiction. No action may be maintained unless the plaintiff has exhausted his administrative remedies. <u>United States v. Steele</u>, 799 F. 2d 461, 465 (9th Cir. 1986). The record before this court does not show plaintiff making any Freedom of Information Act request outside of litigation in other cases. While plaintiff argues he has exhausted his administrative remedies because he did not get a response, the plaintiff admits the requests were made in connection with his litigation (Dkt # 27 page 5). The Freedom of Information Act does not replace discovery rules. Further, a request made as part of discovery in litigation which contains a Freedom of information act is defective and does not exhaust administrative remedies. The defendants are entitled to **DISMISSAL** of the claims **WITHOUT PREJUDICE**.

1.     3.     <u>Federal Tort Claim</u>.

Plaintiff alleges he made a demand for a sum certain "in the amount of 750,000" Plaintiff also alleges the ICE agency denied the claim. Plaintiff does not provide the court with a copy of the claim as an attachment to the complaint despite his assertion to the contrary (Dkt # 21, page 8). Plaintiff does not inform the court of the basis for his tort claim, although it must be assumed the claim involves the information he alleges he requested under the freedom of information act, or the governments allegedly referring to him as Wayne Rudder.

The only proper defendant in the Tort claim is the United States Government. Therefore, defendants Garman, Melendz, and Clarke are entitled to dismissal from this suit.

The remaining defendant claims the tort claim is unexhausted, and that plaintiff has the burden of proving the claim is exhausted. The burden of proving the claim is exhausted is plaintiff's and the issue is jurisdictional. <u>Kielwien v United States</u>, 540 F2d. 676 (4th Cir. 1976).

Defendants argue;

> Federal courts are courts of limited jurisdiction. A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. <u>California ex rel. Younger v. Andrus</u>, 608 F.2d 1247, 1249 (9th Cir. 1979). The party asserting federal jurisdiction bears the burden of proving the case is properly in federal court. <u>McNutt v. GeneralMotors Acceptance Corp.</u>, 298 U.S. 178, 189, 56 S.Ct. 780, 785 (1936).
> The FTCA specifically provides that an action shall not be instituted upon a claim against the United States for money damages unless the claimant first exhausts his administrative remedies. <u>See</u> 28 U.S.C. § 2875(a); <u>see</u> <u>also</u> <u>Brady v. United States</u>, 211 F.3d 499, 502 (9th Cir. 2000). The administrative claim requirement mandates that a plaintiff present a claim to the appropriate federal agency within two years of the date it accrues. <u>Staple v. United States</u>, 740 F.2d 766, 768 (9th Cir. 1984); <u>see</u> <u>also</u> <u>Suarez v. United States</u>, 22 F.3d 1064, 1065 (11th Cir. 1994). The administrative claim requirement is jurisdictional and must be strictly adhered to because the FTCA waives sovereign immunity and any such waiver must be strictly construed in favor of the United States. <u>See</u> <u>Brady</u>, 211 F.3d at 501 (*citing* <u>Jerves v. United States</u>, 966 F.2d 517, 521 (9th Cir. 1992)). When no administrative claim has been filed with the appropriate administrative agency, a district court is without jurisdiction to hear the case, and dismissal for lack of subject matter jurisdiction is mandated. <u>Suarez</u>, 22 F.3d at 1065.
> Plaintiff alleges that he exhausted his administrative remedies pursuant to the FTCA by submitting a tort claim for sum certain, which was denied by Immigration and Customs Enforcement (Dkt. #1, pg. 2). But Plaintiff does not attach a copy of this claim, state when the claim was filed, or attach a copy of the denial. There is no evidence showing when or where this alleged claim was filed, the contents of the claim, or that it was properly submitted to the agency pursuant to 28 U.S.C. § 2875(a). Therefore, any claims against the United States under the FTCA should be dismissed for lack of subject matter jurisdiction.

(Dkt. # 21, pages 7 and 8).

Plaintiff responds and argues "[t]he Defendants claim that the Plaintiff failed to provide evidence that the

Tort Claim has been denied by ICE. They are wrong. This Court should remember that the Plaintiff did attach a copy of the Tort Claim to the original Complaint. Further, this Court has already informed the Plaintiff that he needs not submit duplicate copies of exhibits that have already been made to the Court." (Dkt # 21, page 8). The court has reviewed the original complaint in this case and it does not contain any copy of the tort claim (Dkt. # 5).

Plaintiff goes on to argue "[a]s a further matter, the Court, if not satisfied, should allow discovery to take place to allow the Plaintiff to gain information from the Agency showing that the Plaintiff did comply with the FOIA requirements and the FTCA guidelines. The Plaintiff avers, under penalty of perjury, that discovery will show the fact that FTCA was exhausted and the FOIA was fully exhausted. Ironically, to establish those facts, access to the Custody File, the Grievance File and the Agency file will have to be made and thus [sic] would meet the ends of this litigation in any case." (Dkt # 21, page 9).

This motion is not a 12 (b) (6) motion. The court has the power to look beyond the pleadings. Mr. Marks alleges he does not have access to his own property. Mr. Marks should be given the access to his own papers as needed for him to provide the court with both a copy of the tort claim he filed and a copy of the appropriate response. Instead, Mr. Marks provides a copy of one of his tort claims. He does not specify which one. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim. T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

Mr. Marks should be given access to his own personal property within five days only to the extent that the alleged tort claim and response are made available to him if those documents are in the possession of the government.

The documents may be submitted by plaintiff in an objection to this Report and Recommendation. If the documents are not submitted within thirty-five days, the court should dismiss this final claim and this action. The Bivens claims would be dismissed with prejudice. All other claims would be dismissed without prejudice.

As a final matter, plaintiff asks for sanctions against the defendants for stating the issue of citizenship has been litigated in habeas proceedings (Dkt. # 27). The United States District Court for the Western District of Washington has held:

Petitioner has used or has been known by over fifty aliases, including Vincent Daniel Hopper, Wayne Ricky Elison Rudder, and Antolin Andrew Marks. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at L508-509-Pt. 1; L567-Pt. 1; L571-Pt. 1). **Petitioner's fingerprints match the fingerprints of alien Wayne Ricky Elison Rudder, who is a native a citizen of Trinidad and who was admitted to the United States on or about March 7, 1974, as an immigrant.** (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at L383-84-Pt. 1; R1034-35-Pt. 1; R1021-Pt. 1).

On or about September 24, 1991, the former Immigration and Naturalization Service ("INS") issued an Order to Show Cause ("OSC"), placing petitioner in deportation proceedings and charging petitioner with being deportable from the United States for having been twice convicted of Possession of a Controlled Substance. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at L555-69-Pt. 1; R301-302-Pt. 1). **Petitioner appeared for his deportation hearing before an Immigration Judge ("IJ") and admitted the allegations contained in the OSC and conceded deportability as charged**. Instead of deportation, petitioner filed an application for waiver of inadmissibility under INA § 212(c) and an application for asylum and withholding of deportation. On July 26, 1993, the IJ denied petitioner's applications, and ordered petitioner deported from the United States to Trinidad on the charges contained in the OSC. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R999-1021-Pt. 1). Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which was denied on November 4, 1993. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R1022-31-Pt. 1). On November 18, 1993, petitioner filed a direct appeal of the BIA's decision in the Ninth Circuit Court of Appeals, which was dismissed for lack of jurisdiction. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. # 37 at R753-54-Pt. 1). Petitioner also filed a Petition for Emergency Stay of Deportation in the United States Court of Appeals for the District of Columbia Circuit, which was dismissed on December 6, 1993, for improper venue. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R755-57-Pt. 1). On December 8, 1993, petitioner filed a Motion for Emergency Stay of Deportation with the United States Supreme Court, which was denied the same day. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R842-872-Pt. 1; L278-Pt. 1). On December 9,1993, petitioner was removed from the United States to Trinidad. (*Hopper v. Roach*, Case No. C05-1812-RSL Dkt. #37 at L269-70-Pt. 1; L274-Pt. 1).

On January 14, 1994, only one month after he had been removed, petitioner illegally reentered the United States without inspection. He remained in the United States illegally for more than eleven years before he was discovered at the California State Prison – Solano, where he was serving his sentence for a conviction for Grand Theft. On August 18, 2005, petitioner was released from the California State Prison and transferred to ICE custody. Petitioner claimed that he was Daniel Vincent Hopper, born in Los Angeles, California, and that he had been deported to Trinidad in 1993 illegally. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R996-98- Pt. 1). A fingerprint comparison performed by the Department of Homeland Security Forensic Laboratory showed that petitioner's fingerprints matched the fingerprints of an alien who went by the alias Ricky Elison Rudder who had been deported to Trinidad on December 9, 1993. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R1033-34-Pt. 1).

On August 18, 2005, petitioner was served with a Warrant for Arrest of Alien, a Notice of Custody Determination, and a Notice to Appear, placing him in removal proceedings and charging him with removability for entering the United States without being admitted or paroled, and for reentering the United States after being ordered deported without being admitted or paroled. (*Hopper v. Roach* , Case No. C05-1812-RSL, Dkt. #37 at L530-35-Pt. 1). On September 26, 2005, petitioner appeared before an IJ, claiming that this was a case of mistaken identity and that he was wrongfully removed in 1993. On October 12, 2005, petitioner filed an application for asylum and withholding of removal. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at L583-576-Pt. 1). His case was

scheduled for trial on February 22, 2006, on the issues of removability and asylum from Trinidad. *(Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R1043-1045-Pt. 1; Dkt. #39 at 3 n.1).

On March 23, 2006, however, petitioner was transferred to the custody of the Tacoma Police Department for extradition to California pursuant to a September 1, 2005, warrant for petitioner's arrest for a parole violation. (*Hopper v. Clark*, Case No. C05-1812-RSL, Dkt. #59). On March 28, 2006, ICE filed a motion in the Immigration Court requesting that petitioner's pending removal proceedings be administratively closed because petitioner was no longer in ICE custody. On March 29, 2006, the IJ issued an Order administratively closing petitioner's removal proceedings. (*Hopper v. Clark*, Case No. C05-1812-RSL, Dkt. #58, Ex. B). On April 11, 2006, petitioner returned to the NWDC after California officials decided not to extradite him, and his removal proceedings were reopened.

After a removal hearing, the IJ denied petitioner's application for asylum, withholding of removal, and withholding of removal under Article III of the Convention Against Torture, and ordered him removed to Trinidad and Tobago on December 1, 2006. (Dkt. #22). On February 1, 2007, the IJ denied petitioner's request for a change in custody status. Id. Petitioner timely appealed the IJ's removal order and bond order to the BIA. On April 11, 2007, the BIA dismissed petitioner's appeal of the IJ's removal order. Accordingly, petitioner's order of removal became administratively final on April 11, 2007. On April 20, 2007, the BIA dismissed petitioner's appeal of the IJ's bond order and vacated the IJ's bond order as moot, noting that neither the IJ nor the BIA had authority to set bond conditions because a final order of removal had been entered. Id. On May 3, 2007, petitioner filed a Petition for Review and a motion for stay of removal in the Ninth Circuit Court of Appeals. Rudder v. Gonzales, No. 07-71756 (9th Cir. filed May 3, 2007). Under Ninth Circuit General Order 6.4(c)(1), this caused a temporary stay of removal to automatically issue. The Petition for Review remains pending before the Ninth Circuit.

(Marks v. Clark, 06-CV-0717RSL/MAT, Dkt. # 25 Report and Recommendation)(Emphasis added, foot notes omitted)(Report and Recommendation adopted by the court July 23, 2007, Dkt. # 30). The court finds the defendants position well supported by the record in and the motions for sanctions frivolous.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **July 25, 2008**, as noted in the caption.

DATED this 3 day of July, 2008.

/S/ *J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge

ORDER
Page - 10